**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION**

| | | |
|---|---|---|
| LAUREN SISSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  CIV-14-6090 |
| | ) | |
| THE SALVATION ARMY, | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT'S, THE SALVATION ARMY, BRIEF IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

---

LEONARD COURT, OBA #1948
ALLEN HUTSON, OBA #30118
CROWE & DUNLEVY
A Professional Corporation
Braniff Building
324 North Robinson, Suite 100
Oklahoma City, OK  73102-8273
(405) 235-7700
leonard.court@crowedunlevy.com
allen.hutson@crowedunlevy.com
-And-
J. BRUCE CROSS, ABA #74028
GREG NORTHERN, ABA #2011181
CROSS, GUNTER, WITHERSPOON AND
GALCHUS, PC
500 President Clinton Avenue
Little Rock, AR 72201
(501) 371-9999
bcross@cgwg.com
gnorthen@cgwg.com

ATTORNEYS FOR DEFENDANT
THE SALVATION ARMY

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................... 1

FACTUAL BACKGROUND ................................................................... 2

THE WORK OF TSA ............................................................................... 2

PLANNED GIVING PROGRAM ........................................................... 3

PLAINTIFF'S EMPLOYMENT WITH TSA ......................................... 5

PLAINTIFF'S JOB PERFORMANCE AND TERMINATION ............. 7

PLAINTIFF'S SEX DISCRIMINATION CLAIM .................................. 8

PLAINTIFF'S BANKRUPTCY ............................................................... 9

PLAINTIFF'S FAILURE TO MITIGATE .............................................. 11

I.  TSA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
    OVERTIME CLAIM BECAUSE PLAINTIFF WAS AN EXEMPT
    ADMINISTRATIVE EMPLOYEE UNDER THE FLSA ................................. 12

    A.  Associate Planned Giving Directors Perform Non-Manual Work
        Directly Related to Management or General Business Operations
        of The Salvation Army ........................................................................ 13

    B.  Associate Planned Giving Directors Exercise Discretion and
        Independent Judgment on Matters of Significance. ............................ 16

II. TSA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
    SEX DISCRIMINATION CLAIM BECAUSE THE HOSTILE WORK
    ENVIRONMENT CLAIMS FAIL AS A MATTER OF LAW ....................... 20

    A.  The Undisputed Evidence Proves That The Supervisor Treated Male
        and Female Employees In The Same Manner ..................................... 21

    B.  The Alleged Actions Of The Supervisor Were Not Severe and
        Pervasive Enough To Constitute A Hostile Work Environment .......... 23

III. TSA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
    RETALIATION CLAIM BECAUSE PLAINTIFF FAILS TO PROVE
    THAT SHE WOULD NOT HAVE BEEN FIRED "BUT FOR" THE
    FILING OF HER EEOC CHARGE ............................................................... 26

IV. TSA IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF
IS JUDICIALLY ESTOPPED FROM PURSING THIS ACTION BY HER
FAILURE TO NOTIFY THE BANKRUPTCY COURT OF THIS
LITIGATION IN A TIMELY FASHION ........................................................ 29

V. PLAINTIFF'S BACKPAY, IF ANY, UNDER HER TITLE VII CLAIMS
IS LIMITED BECAUSE SHE TOOK HERSELF OUT OF THE JOB
MARKET ..................................................................................................... 32

CONCLUSION ..................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Al-Zubaidy v. TEK Indus., Inc.*,
   406 F.3d 1030 (8th Cir. 2005)...........................................................................24

*Arraleh v. County of Ramsey*,
   461 F.3d 967 (8th Cir. 2006) ......................................................................21, 27

*Canova v. Nat'l Labor Relations Bd.*,
   708 F.2d 1498 (9th Cir. 1983) ...........................................................................32

*Carlson v. C.H. Robinson Worldwide, Inc.*,
   2005 WL 758601 (D. Minn. Mar. 30, 2005)............................................14, 30

*Cash v. Cycle Craft Co.*,
   508 F.3d 680 (1st Cir. 2007) ..............................................................................18

*Clegg v. Arkansas Dep't of Correction*,
   496 F.3d 922 (8th Cir. 2007) ..............................................................................20

*Cotrill v. MFA, Inc.*,
   443 F.3d 629 (8th Cir. 2006)...............................................................................20

*Dattoli v. Principi*,
   332 F.3d 505 (8th Cir. 2003)...............................................................................22

*Duncan v. Gen. Motors Corp.*,
   300 F.3d 928 (8th Cir. 2002)...............................................................................25

*Dymond v. United States Postal Serv.*,
   670 F.2d 93 (8th Cir. 1982).................................................................................19

*E.E.O.C. v. Sandia Corp.*,
   639 F.2d 600 (10th Cir. 1980) ............................................................................32

*Eastman v. Union Pacific R.R. Co.*,
   493 F.3d 1151 (10th Cir. 2007) ..........................................................................29

*Ellet v. Big Red Keno, Inc.*,
   Nos. 98-3046, 98-3694, at *1, 221 F.3d 1342 (8th Cir. July 21, 2000)..................22, 23

*Endres v. Helms*,
  617 F. Supp. 1260 (D.C. Cir. 1985) ...................................................................32

*Gilooly v. Mo. Dept. of Health and Senior Serv., Div. of Senior Serv.*,
  421 F.3d 734 (8th Cir. 2005)................................................................24, 25

*Goff v. Bayada Nurses, Inc.*,
  424 F.Supp.2d 816 (E.D. Pa. March 24, 2006) ...............................................18

*Green v. Franklin Nat'l Bank of Minneapolis*,
  459 F.3d 903 (8th Cir. 2006)..........................................................26, 27

*Haywood v. Am. Van Lines, Inc.*,
  121 F.3d 1066 (7th Cir. 1997) ...........................................................14

*Henson v. Hawker Beechcraft Corp.*,
  2010 WL 3167528 (E.D. Ark. West. Div. Aug. 10, 2010) ...............................27

*Hines v. State Room Inc.*,
  665 F.3d 235 (1st Cir. 2011) ..............................................14, 17, 18, 19

*Irva v. Britton*,
  753 F.2d 80 (8th Cir. 1985) ...........................................................33

*Jackman v. Fifth Judicial District Dept. of Correctional Servs.*,
  728 F.3d 800 (8th Cir. 2013)...........................................................26

*Kennedy v. Commonwealth Edison Co.*,
  410 F.3d 365 (7th Cir. 2005)...........................................................19

*Kopp v. Samaritan Health Sys., Inc.*,
  13 F.3d 264 (8th Cir. 1993)...........................................................22

*Kunstmann v. Aaron Rents, Inc.*,
  2014 WL 1388387 (N.D. Ala. April 9, 2014).................................................31

*LeGrand v. Area Res. for Cmty. & Human Servs.*,
  394 F.3d 1098 (8th Cir. 2005) .........................................................24

*Love v. Tyson Foods, Inc.*,
  677 F.3d 258 (5th Cir. 2012)...........................................................31

*Miller v. Marsh*,
  766 F.2d 490 (11th Cir. 1985) .........................................................33

*Reich v. John Alden Life Insurance Co.*,
   126 F.3d 1 (1st Cir. 1997) ......................................................................17

*Renfro v. Indiana Michigan Power Co.*,
   497 F.3d 573 (6th Cir. 2007)..................................................................19

*Robinson v. Tyson Foods, Inc.*,
   595 F.3d 1269 (11th Cir. 2010) ........................................................29, 30

*Schaefer-LaRose v. Eli Lilly & Co.*,
   679 F.3d 560 (7th Cir. 2012)...........................................................16, 17

*Tuggle v. Mangan*,
   348 F.3d 714 (8th Cir. 2003)..................................................................25

*Viola v. Comprehensive Health Mngmt. Inc.*,
   2011 WL 4436589 (11th Cir. Sept. 26, 2011) ...............................16, 17

*White v. Wyndham Vacation Ownership, Inc.*,
   617 F.3d 472 (6th Cir. 2010)..................................................................31

*Wilkie v. Dept. of Health and Human Serv.*,
   638 F.3d 944 (8th Cir. 2011)............................................................24, 26

*Wright v. St. Vincent Health System*,
   730 F.3d 732 (8th Cir. 2013)..................................................................26

SUPEME COURT

*Am. Mfg. Co.*,
   167 N.L.R.B. 520 (1967) ........................................................................32

*New Hampshire v. Main*,
   532 U.S. 742 (2001)................................................................................29

*Univ. of Tex. S.W. Med. Ctr. v. Nassar*,
   133 S. Ct. 2517 (2013)............................................................................26

STATUTES

29 U.S.C. § 207(a)(1)....................................................................................12

Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, et seq. ("ACRA") ..............20

Fair Labor Standards Act ("FLSA") ....................................................1, 11, 12, 30

**OTHER AUTHORITIES**

29 C.F.R. § 201(a) ..................................................................................................13

29 C.F.R. § 541.200 ...............................................................................................12

29 C.F.R. § 541.202(a) .....................................................................................16, 17

29 C.F.R. § 541.203 ...............................................................................................14

29 C.F.R. § 541.203(b) ...........................................................................................14

29 C.F.R. § 541.704 ...............................................................................................18

69 Fed.Reg. 21,122, 22,146 (Apr. 23, 2004) .........................................................15

Opinion No. FLSA2006-43 (Nov. 27, 2006) ..........................................................18

Opinion No. FLSA2009-28 (Jan. 16, 2009).............................................................18

## INTRODUCTION

Plaintiff Lauren Sisson was employed by The Salvation Army ("TSA") as an Associate Planned Giving Director for just a little over nine months.  For seven out of those nine months she was either in a probationary status as a new employee or on one of three different action plans due to her failure to grasp the tasks required for her position.  Ultimately, these shortcomings resulted in her termination.

Plaintiff now claims that she was misclassified as an exempt employee and that she should have been receiving overtime in addition to her annual salary of $55,000 per year.  Plaintiff's entire argument is based on her claim that she lacked discretion to make significant business decisions during her short tenure.  Plaintiff's argument fails as a matter of law.

First, the ability to make "significant business decisions" is not the test for the administrative exemption under the Fair Labor Standards Act ("FLSA").   Under the proper test, numerous courts and even the Department of Labor have held that persons in similar positions do, in fact, meet the exemption.   Second, Plaintiff's allegations are clearly rebutted by the undisputed evidence that she was able to, and did in fact exercise discretion and independent judgment with regard to matters of significance.  Accordingly, summary judgment must be entered in TSA's favor.

Plaintiff also claims that she suffered a hostile work environment based on her sex from her female supervisor and that she was really terminated because she had purportedly threatened to file an EEOC charge.  Even construing Plaintiff's claims in her

favor, the evidence shows that she cannot create a material issue of fact as to either of these claims.

Finally, separate and apart from the merits, TSA is also entitled to summary judgment because Plaintiff is judicially estopped from bringing claims she did not disclose in her filings with the Bankruptcy Court until TSA brought the issue to light. For the reasons discussed more fully below, TSA requests that summary judgment be entered in its favor and that this matter be dismissed in its entirety.

## FACTUAL BACKGROUND

### THE WORK OF TSA

Founded in 1865, the TSA is an international charitable organization which is now active in 121 countries.  (Employee Manual, attached to TSA's Motion for Summary Judgment as Ex. 1, p. 1).  The TSA manages more than 28,000 religious and charitable centers, ministering to the varying needs of people throughout the world.  (Employee Manual, Ex. 1, p. 1).

The work of the TSA is divided into geographical territories, each of which is a separate corporate entity with separate employment policies.  The United States Southern Territory covers the Southeastern United States, with Territorial Headquarters in Atlanta, Georgia.  The Southern Territory consists of divisions encompassing fifteen states and the District of Columbia which are divided as follows: Alabama/Louisiana/Mississippi Division,  Arkansas/Oklahoma  Division,  Florida  Division,  Georgia  Division, Kentucky/Tennessee Division, Maryland/West Virginia Division, National Capitol and Virginia Division, North and South Carolina Division, and Texas Division.  (Employee

2

Manual, Ex. 1, p. 1-2).  All employees in the Southern Division are governed by an Employee Manual, which covers the basic employment policies applicable to all employees in all positions including, but not limited to, paid time off, payroll information, anti-harassment and anti-discrimination, and electronic communication. (Employee Manual, Ex. 1,Table of Contents).

## PLANNED GIVING PROGRAM

One of the ways the mission of the TSA is funded is through its Planned Giving Program.  Each division has a full-time Divisional Planned Giving Director.  In many cases, the Divisional Planned Giving Director has one or more Associate Planned Giving Directors ("Associate Directors") who have direct field responsibility for a specific geographical area.  (Territorial Planned Giving Manual, attached to TSA's Motion for Summary Judgment as Ex. 2, p. 24-25).  Planned giving accounts for approximately one-fifth of the annual reporting income to the territory.  (Deposition of Lindsay Lapole ("Lapole Depo."), attached to TSA's Motion for Summary Judgment as Ex. 3, p. 9:15-21).

The minimum qualifications for the Associate Director position include a Bachelor's Degree from an accredited college or university in a related field of study, as well as five years of related work experience performing fund-raising work for a charitable organization or similar sales work experience causing people to make measurable decisions.  (Associate Planned Giving Director Job Description, attached to TSA's Motion for Summary Judgment Ex. 4).  The job of an Associate Director is to solicit and secure planned gifts such as wills, trusts, and annuities.  This job is carried out

3

by traveling throughout the geographic territory to cultivate and maintain relationship with donors and their advisors, providing information, answering questions, and assisting donors with their estate planning and determining the most appropriate planned giving gift.  (Associate Planned Giving Director Job Description, Ex. 4; *see also* Deposition of Lauren Sisson ("Pl's Depo,"), attached to TSA's Motion for Summary Judgment as Ex. 5, p. 60:1-25).

As part of this process, Associate Directors conduct personal interviews to identify prospects, consult with individuals about specific planned giving techniques, and assist them in determining the most appropriate planned gift for their personal circumstances, while always remaining sensitive to their financial and spiritual needs.  (Associate Planned Giving Director Job Description, Ex. 4; *see also* Pl's Depo. Ex. 5, p. 61:2-7).  In order to provide the Associate Director with the information necessary to assist donors in planning their estate, the Associate Directors are provided a Planned Giving Manual. After some policy guidelines, the bulk of the remaining manual covers various legal instruments and the technical and legal requirements for each one including wills, charitable gift annuities, charitable remainder trusts, pooled income funds, charitable lead trusts, revocable trusts, endowment funds, and deed transfers.  (Territorial Planned Giving Manual, Ex. 2, Table of Contents).

Once the Associate Director has assisted the donor in determining the most appropriate planned gift for their circumstances, the Associate Director must then coordinate the details which include conferring with attorneys, trust officers and other professionals, providing them with the correct wording of gift agreements, and ensuring

4

the accuracy and completeness of all information. (Associate Planned Giving Director Job Description, Ex. 4; *see also* Pl's Depo. Ex. 5, p. 62:16-19). In addition to donor relations, Associate Directors conduct public seminars on planned giving, establish and maintain professional relationships in the community, read and maintain a working knowledge of IRS regulations and applicable state and federal laws, as well as legislation in relation to planned giving and taxation.   (Associate Planned Giving Director Job Description, Ex. 4).

The Territorial Planned Giving Director during the relevant time period testified that the Job Description accurately reflects the responsibilities of an Associate Planned Giving Director, that the primary responsibility of the position is to solicit and secure planned gifts, and that the job is "absolutely" essential to the operation of TSA.  (Lapole Depo. Ex. 3, pp. 27:11-25; 28:1-4).

## PLAINTIFF'S EMPLOYMENT WITH TSA

Plaintiff was hired as an Associate Director for the Arkansas/Oklahoma Division of the Southern Territory on July 16, 2012.  (New Hire Form, attached to TSA's Motion for Summary Judgment as Ex. 6).  At the time she was hired, Plaintiff had a Bachelor's Degree from the University of Central Arkansas.  (Pl's Depo. Ex. 5, p. 9:10-14). She had previously held a number of different jobs in the financial industry, including a job as a financial advisor at Merrill Lynch and at a company called VALIC.  (Pl's Depo. Ex. 5, pp. 11:11-19; 13:10-24).

Her annual salary was $55,000.00. She was also provided a company vehicle. She reported to Diana Behm-Lasswell, Divisional Planned Giving Director. (Offer Letter, attached to TSA's Motion for Summary Judgment as Ex. 7).

Consistent with her job description, Plaintiff described her job at TSA (in her own words) as being responsible for all planned giving in the state of Arkansas, to include: donor and prospect visits, marketing, donor and prospect education, presenting informational seminars, professional advisor collaboration, civic group membership, Salvation Army brand ambassador, and donor and corps officer relationship maintenance. (Resume, attached to TSA's Motion for Summary Judgment as Ex. 8). She likewise states that she had to cultivate and deepen existing donor relationships by gathering information to create a complete picture of donor's charitable intent and financial position and goals, and prepare and present donor gift proposals after gathering all the pertinent information from the donor. (Resume, Ex. 8).

Plaintiff also had to collaborate with donor professional advisors, CPAs, attorneys and insurance agents to execute donor wishes. (Resume, Ex. 8). In addition, she educated donors and prospects on the aspects of charitable giving vehicles such as Charitable Gift Annuities, Charitable Remainder Trusts, Charitable Lead Trusts, Will Bequests, and TOD designations. (Resume, Ex. 8). She also conducted in-home visits with donors and prospects to increase levels of trust and comfort and to ensure a complete picture of charitable intent and financial position was documented and that donor-appropriate actions were taken. (Resume, Ex. 8).

6

Plaintiff admits this resume she prepared is an accurate description of her job duties at the TSA.  (Pl's Depo. Ex. 5, pp. 19:24-25; 20:1-3).  Plaintiff also admits that she was the "face" of TSA at community meetings and to the donors.  (Pl's Depo. Ex. 5, pp. 29:23-25; 30:1-6).

## PLAINTIFF'S JOB PERFORMANCE AND TERMINATION

After she was hired, Plaintiff went through a 90-day training and orientation program both in the Division and at Territorial Headquarters.  (Territorial Planned Giving Manual, Ex. 2, p. 24). Just days after completing her 90-day training and orientation program, Plaintiff was placed on a 30-day enhancement action plan.   Areas for improvement included focusing more on planned giving and donors, active listening, being fully prepared and on-time, working on goals and objectives, and speaking louder. (30 Day Enhancement Action Plan, attached to TSA's Motion for Summary Judgment as Ex. 9). Though Plaintiff did not consider the Action Plan to be punitive, she did understand that these were things upon which her supervisor wanted her to improve. (Pl's Depo. Ex. 5, p. 73:1-19).

The following month, Plaintiff was placed on a 60-day strategic action plan for the same issues.  (60 Day Strategic Action Plan, attached to TSA's Motion for Summary Judgment as Ex. 10).  On January 30, 2013, Plaintiff was placed on a third action plan. This plan had a duration of sixteen days.  (Sixteen Day Action Performance Plan, attached to TSA's Motion for Summary Judgment as Ex. 11).

On April 19, 2013, just a little over nine months after her employment began, a decision was made to terminate Plaintiff's employment for failing to correct the

documented performance problems which included: lack of engagement, preparedness, donor interaction, attention to detail, and repeated requests for repeat training. The decision was made by Major James Hall, the General Secretary of TSA, with input from Lindsay Lapole, Territorial Planned Giving Director, and Chad Haney, Divisional Development Director. (Lapole Depo. Ex. 3, pp. 62:25; 63:1-22; 67:10-22).

Mr. Lapole testified that he was unaware that Plaintiff intended to file a Charge of Discrimination at the time the decision had been made, that Plaintiff's sex was never discussed during the meeting about her termination, and that he had no knowledge of any complaints made by Plaintiff about sex discrimination. (Lapole Depo. Ex. 3, pp. 64:1-21; 65:9-11, 18-24). The decision was communicated to Plaintiff on May 3, 2012, (Termination of Employment, Ex. 12).

## PLAINTIFF'S SEX DISCRIMINATION CLAIM

Plaintiff requested a meeting with Jeff Cathey, Development Director, in November of 2012 to discuss problems she was having with Ms. Lasswell. At no time during that meeting did Plaintiff state that she felt she was being treated poorly because of her sex. Indeed, Plaintiff never complained at any time during her employment that she was being harassed or discriminated against based on her sex. (Pl's Depo. Ex. 5, pp. 88:3-25; 89:1-17). Even when Plaintiff notified TSA that she had contacted the EEOC, she said nothing about sex discrimination. (Email from Plaintiff to Amber Meiki, dated 4/22/13, attached to TSA's Motion for Summary Judgment as Ex. 13).

Plaintiff now claims that Ms. Lasswell subjected her to a pattern of harassing conduct motivated by her sex. (Pl's Interrogatory Answers, attached to TSA's Motion

for Summary Judgment as Ex. 14, No. 7).  Specifically, Plaintiff claims that Ms. Lasswell (1) placed her on unwarranted performance improvement plans, (2) limited her contact with her colleagues, (3) derided her ability to her job, (4) denied her training, and (5) recommended she be terminated. *Id.*

However Plaintiff admits that she was one of approximately six employees (both men and women) that served as Associate Planned Giving Directors under Diana Lasswell during Ms. Lasswell's tenure.  (Pl's Depo. Ex. 5, p. 158:3-18). She does not know of any male Associate Planned Giving Director that Diana Lasswell treated better than her.  *Id.*

Plaintiff further informed the Equal Employment Opportunity Commission ("EEOC") that Ms. Lasswell treated both men and women the same.  (Pl's Depo. Ex. 5, p. 160:7-14; *see also* EEOC Sequence of Events, attached to TSA's Motion for Summary Judgment as Ex. 15, p. 1). In response, the EEOC informed Plaintiff that the facts allegedly supporting her hostile work environment claim based on sex discrimination were "self-defeating" because Plaintiff admitted both men and women were treated the same. *Id.*

## PLAINTIFF'S BANKRUPTCY

On April 19, 2013, Plaintiff completed an EEOC intake questionnaire alleging sex discrimination against TSA.  On May 17, 2014, the EEOC Charge was completed alleging retaliation.  (Amended Complaint, Dkt. No. 28, attached to TSA's Motion for Summary Judgment as Ex. 16, ¶ 43-44). Seven months later Plaintiff filed for Chapter 13 Bankruptcy.  (2013 Bankruptcy Petition, attached to TSA's Motion for Summary

9

Judgment as Ex. 17).  Plaintiff was represented by counsel.  (2013 Bankruptcy Petition, Ex. 17, p. 2).

This was not the first time Plaintiff had filed for Bankruptcy.  She filed previously in 2010 and 2004.  Each time, she was represented by legal counsel.  (2010 Bankruptcy Petition, attached to TSA's Motion for Summary Judgment as Ex. 18).

In the 2013 Bankruptcy Petition,  Plaintiff was required to list all "contingent and unliquidated claims of any nature" and to give the value of each.  (2013 Bankruptcy Petition, Ex. 17, p. 14).  In response to that question, Plaintiff stated that she had an "EEOC case open against the Salvation Army. EEOC still has the case. They have not given the debtors' a right to sue letter."  (2013 Bankruptcy Petition, Ex. 17, p. 14).

In the same Bankruptcy Petition, Plaintiff was required, under penalty of perjury, to list all suits and administrative proceedings to which she is or was a party within one year immediately preceding the filing of the bankruptcy case.  (2013 Bankruptcy Petition, Ex. 17, page 39.)  In response to that question, Plaintiff checked "none", even though she did have a pending administrative charge before the EEOC.  (2103 Bankruptcy Petition, Ex. 17, p. 39.)

On May 12, 2014, Plaintiff received a Notice of Right to Sue from the EEOC. (Amended Complaint, Ex. 16, ¶ 46). On August 8, 2014, Plaintiff filed this action against TSA.  (Amended Complaint, Ex. 16, ¶ 2.)

On February 11, 2015, TSA filed its Response and Objection to Plaintiff's Motion for Conditional Certification.  In that Motion, TSA pointed out these issues, noting that there was no evidence in the record that the bankruptcy court or bankruptcy trustee were

10

ever notified that Plaintiff had filed suit after the EEOC issued its Notice of Right to Sue on the sex discrimination claim.  (Response, Dkt. 35). There is no evidence to indicate the bankruptcy court or bankruptcy trustee ever had any knowledge about or approved of the pending FLSA collective action at all. (2013 Bankruptcy Docket Sheet, Ex. 19).

Even after TSA raised this issue, Plaintiff waited over eight months before taking any action to alert the bankruptcy court.  Specifically, the day before her deposition was taken, she filed a Motion asking the Court to Appoint a Special Counsel to oversee her claims in this case.  (Motion to Appoint Special Counsel, attached to TSA's Motion for Summary Judgment as Ex. 20; Pl's Depo., Ex. 5, Cover Sheet).

## PLAINTIFF'S FAILURE TO MITIGATE

Plaintiff looked for work for three months following her termination in May of 2013.  (Pl's Depo. Ex. 5, p. 31:14-17). In August of 2013, Plaintiff began a teaching job. (Pl's Depo. Ex. 5, p. 15:13-22). She has submitted no resumes or applications for planned giving jobs since that time.  (Pl's Depo. Ex. 5, p. 33:3-11).

Since taking the teaching job in August of 2013, Plaintiff has either been teaching or going to school to get her second Master's Degree (also in Education).  She has not performed any other type of work nor looked for any.  (Pl's Depo. Ex. 5, p. 33:3-9). Plaintiff states that her heart is in the classroom and that she has a "deep" commitment to her change in career path to teaching.  (Resume, attached to TSA's Motion for Summary Judgment as Ex. 21).

<u>**ARGUMENT**</u>

**I.    TSA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S OVERTIME CLAIM BECAUSE PLAINTIFF WAS AN EXEMPT ADMINISTRATIVE EMPLOYEE UNDER THE FLSA.**

The FLSA requires overtime pay at the rate of one and one-half of the regular rate for all hours worked in excess of a forty-hour work week, unless an exception applies. *See* 29 U.S.C. § 207(a)(1).  Relevant to this case, the statute excludes from the overtime requirements, anyone who is employed in a bona fide executive, administrative, or professional capacity.  *See id*. at § 213(a)(1) (listing the so-called "white collar" exemptions).  The regulations enacted by the Secretary of Labor pursuant to the statute define an administrative employee as someone:

(1)    compensated on a salary or fee basis at a rate of not less than $455 per week…;

(2)    whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;

(3)    whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.

It is undisputed that Plaintiff was paid a yearly salary of $55,000.  (Offer Letter, attached to TSA's Motion for Summary Judgment as Ex. 7).  This is more than double the minimum amount required to meet the exemption.  Therefore the first prong is satisfied as a matter of law.

Plaintiff is expected to claim that her position did not meet the second and third prongs of the definition because: 1) "fundraisers" are purportedly not involved in

12

"general business operations;" and 2) they lack "discretion to make significant business decisions." As discussed below, Plaintiff's arguments fail on both counts.

### A. Associate Planned Giving Directors Perform Non-Manual Work Directly Related to Management or General Business Operations of The Salvation Army.

To qualify for the FLSA's administrative exemption, an employee's primary duty must be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers. 29 C.F.R. § 201(a). To meet this requirement, the employee must perform work directly related to assisting with the "running" or "servicing" of the business as opposed to working on a manufacturing line or selling a product in a retail or service establishment. *Id.* Work that is directly related to management or general business operations includes, but is not limited to, work in functional areas such as… "finance…advertising… marketing…research…public relations…legal and regulatory compliance…and similar activities." *Id.* at § 201(b).

Here, it is undisputed that the entire mission of the TSA is to minister to the varying needs of people throughout the world. (Employee Manual, attached to TSA's Motion for Summary Judgment as Ex. 1). They do this internationally through more than 28,000 religious and charitable centers. *Id.* To carry out its mission, the TSA must raise funds. They do this in a number of different ways, one of which is through its Planned Giving Program. (Territorial Planned Giving Manual, attached to TSA's Motion for Summary Judgment as Ex. 2, p. 24-25). While critical to the success of the mission (accounting for one-fifth of the territorial income), the Planned Giving Program is

13

undeniably an ancillary means to support their principal function of ministering across the globe.  (Lapole Depo., attached to TSA's Motion for Summary Judgment as Ex. 3, p. 9:15-21).   This is precisely the kind of "service" to the management and business operations that the regulation was designed to address.  *See Hines v. State Room Inc.*, 665 F.3d 235, 245-46 (1st Cir. 2011) (holding that sales manager's work to create a custom event for the client, to establish long-term relationships, keep clients happy and maintain the overall reputation of the banquet facility was ancillary to the principal business of providing banquets); *Carlson v. C.H. Robinson Worldwide, Inc.*, 2005 WL 758601, at *10 (D. Minn. Mar. 30, 2005) (holding that "servicing" as stated in the regulation denotes "employment activity ancillary to an employer's principal production activity.") (quoting *Haywood v. Am. Van Lines, Inc*., 121 F.3d 1066, 1072 (7th Cir. 1997)), attached to TSA's Motion for Summary Judgment as Ex. 22.

Furthermore, the regulations provide specific examples of occupations that generally meet the administrative duties test.  *See* 29 C.F.R. § 541.203. Subpart (b) includes work such as:

> collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products.

*See* 29 C.F.R. § 541.203(b).  Even the preamble to the 2004 revisions addresses this kind of work, concluding that "…[s]ervicing existing customers, promoting the employer's financial products, and advising customers on the appropriate financial

14

product to fit their financial needs are duties directly related to the management or general business operations of their employer or their employer's customers…"  69 Fed.Reg. 21,122, 22,146 (Apr. 23, 2004).

While Plaintiff was not marketing "financial products," she was undeniably marketing various forms of "charitable giving" while performing the exact same tasks referenced in the regulation and preamble.  Indeed, in her own words, Plaintiff engaged in:

- donor and prospect visits;

- marketing;

- donor and prospect education;

- presenting informational seminars;

- professional advisor collaboration;

- civic group membership;

- Salvation Army brand ambassador;

- donor and corps officer relationship maintenance;

- gathering information to create a complete picture of donor's charitable intent and financial position and goals;

- preparing and presenting donor gift proposals after gathering all pertinent information from the donor; and

- educating donors and prospects on the aspects of charitable giving vehicles through formal informational seminars and informal living room conversations.

(Resume, Ex. 8, *see also* Pl's Depo., Ex. 5, pp. 19:24-25; 20:1-3).   Plaintiff likewise admits to having been the "face" of TSA at community meetings and to donors.   (Pl's Depo., Ex. 5, pp. 29:23-25; 30:1-6).   This is precisely the type of work that satisfies the administrative exemption.   *See Viola v. Comprehensive Health Mngmt. Inc.,* 2011 WL 4436589, at * 2 (11th Cir. Sept. 26, 2011) (finding that community event coordinator met the exemption where she was involved in the marketing and promoting of the company in the local community and that she was the "face" of the Company), attached to TSA's Motion for Summary Judgment as Ex. 23; *see also Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 576-77 (7th Cir. 2012) (finding sales reps to be the "face" of the employer and as such were running and servicing the business within the meaning of the regulation).

Under the applicable authority, and after a review of the evidence, there is no genuine issue of material fact as to the second prong of the administrative exemption. The undisputed facts demonstrate as a matter of law that Associate Planned Giving Directors perform work directly related to TSA's general business operations.

### B.   Associate Planned Giving Directors Exercise Discretion and Independent Judgment on Matters of Significance.

The third requirement of the administrative exemption is that the employee's primary duty must include the exercise of discretion and independent judgment.   29

C.F.R. § 541.202(a).   In general, this involves "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."   *Id.*

However the term "discretion and independent judgment" does not require that the decisions made by an employee have a "finality that goes with unlimited authority and a complete absence of review."   *Id.* § 541.202(c).   The fact that an employee's decisions are subject to review does not mean the employee is not exercising discretion and independent judgment.   *Id.*

Numerous courts have found this requirement met where job duties were similar to those here.   *Hines,* 665 F.3d at 245 (affirming decision that sales managers were exempt even though they could not make unapproved contractual decisions that financially obligated employer and lacked any policy-making authority, because their primary duty was to seek out potential clients, secure commitments, assist them in selecting various options to create a personalized product for the client);   *Schaefer-LaRose,* 679 F.3d at 580-81 (finding pharmaceutical sales reps to meet the exemption where sales reps were sent into physicians' offices to engage in conversation and tailor their message to the particular physicians in their territory to persuade them to prescribe the company's drugs); *Viola,* 2011 WL 4436589, at *3 (upholding summary judgment where community outreach associate sought out sources of potential customers, and created strategy to promote the insurer's brand and image), Ex. 23; *Reich v. John Alden Life Insurance Co*., 126 F.3d 1, 13-14 (1st Cir. 1997) (marketing representatives exempt where they determined which products to market to independent agents based on their knowledge of

the agents, maintained contact with them, and served as a "conduit" between the agents and the life insurance company); *Cash v. Cycle Craft Co*., 508 F.3d 680, 685-86 (1st Cir. 2007) (customer service manager exempt where he was responsible for communicating with customers and reacting to their unique needs).

The Department of Labor agrees.  In multiple wage and hour opinion letters, the Department has held that employees who meet with clients or prospective clients to collect and discuss financial information, analyze the information collected and compare and evaluate possible options to offer based on the client's financial status, risk tolerance, needs, and objectives, while conforming to laws and regulations in the industry, is properly classified as exempt.  WH Opinion No. FLSA2009-28 (Jan. 16, 2009), attached to TSA's Motion for Summary Judgment as Ex. 24; *see also* WH Opinion No. FLSA2006-43 (Nov. 27, 2006), attached to TSA's Motion for Summary Judgment as Ex. 25.

To the extent Plaintiff may claim she personally never felt she was given discretion on "significant business decisions," such allegations show, at best, circumstances purely personal to Plaintiff's job performance deficiencies and limited time in the position -- not the position itself.  In any event, that is but one factor the regulations suggest can be considered.  It is not a requirement that must be satisfied. *Hines*, 665 F.3d at 245-46.

The Planned Giving Manual is equally insufficient to defeat the exemption. Having use of a manual containing highly technical legal matters does not destroy the administrative exemption.  29 C.F.R. § 541.704;  s*ee also Goff v. Bayada Nurses, Inc*.,

424 F.Supp.2d 816, 824 (E.D. Pa. March 24, 2006) (finding employee to be exempt where her main task was to match up specific patient needs with specific patient nurse skills even though she did so within the parameters of an assignment coding system, but still used discretion in making the placement); *Renfro v. Indiana Michigan Power Co.,* 497 F.3d 573, 577 (6th Cir. 2007) (channeling discretion through a manual or procedure does not eliminate the existence of that discretion); *Hines*, 665 F.3d at 245 (same); *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 374 (7th Cir. 2005) (same); *Dymond v. United States Postal Serv.*, 670 F.2d 93, 95-96 (8th Cir. 1982) (same). Thus, Plaintiff clearly was able to and did, in fact, exercise discretion and independent judgment with regard to matters of significance while employed as an Associate Planned Giving Director.

Under applicable regulations, case law, wage and hour opinions, and undisputed facts, the classification of Associate Planned Giving Directors as exempt was proper as a matter of law. Plaintiff's allegations are clearly rebutted by the undisputed evidence, and no material question of fact exists. Therefore, Plaintiff's complaint should be dismissed in its entirety and with prejudice.

19

## II.    TSA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SEX DISCRIMINATION CLAIM BECAUSE THE HOSTILE WORK ENVIRONMENT CLAIMS FAIL AS A MATTER OF LAW[1]

"To establish a *prima facie* case of sex discrimination based on a hostile work environment, [the] plaintiff employee must establish that (1) she was a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; and (4) the harassment was sufficiently severe or pervasive as to affect a term, condition, or privilege of employment."  *Cotrill v. MFA, Inc.*, 443 F.3d 629, 636 (8th Cir. 2006).  For purposes of this motion for summary judgment **only**, TSA concedes Plaintiff can establish the first two (2) elements of her *prima facie* hostile work environment claim.  Plaintiff, however, lacks any evidence (nor can she produce any) sufficient to establish the third and fourth elements her sex discrimination claim.

Plaintiff alleges Diana Lasswell, her supervisor, subjected her to a pattern of harassing conduct motivated by her sex.  (Pl's Interrogatory Answers, attached to TSA's Motion for Summary Judgment as Ex. 14, No. 7).  Specifically, Plaintiff claims Ms. Lasswell (1) placed her on unwarranted performance improvement plans, (2) limited her contact with her colleagues, (3) derided her ability to her job, (4) denied her training, and (5) recommended she be terminated.[2]   *Id.*   However, Plaintiff lacks any objective

---

[1] Plaintiff's hostile work environment claim pursuant to the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, et seq. ("ACRA"), will rise and fall with her Title VII hostile work environment claim.  *See Clegg v. Arkansas Dep't of Correction,* 496 F.3d 922, 926 (8th Cir. 2007) ("Discrimination claims asserted pursuant to § 1983, Title VII, and the ACRA are analyzed under the burden-shifting framework set forth in *McDonald Douglas*.").

[2] Plaintiff admitted in her deposition that Ms. Lasswell did not limit her contact with her colleagues. (Pl's Depo. Ex. 5, p. 143:19-22).  Moreover, Plaintiff cannot identify a single instance in which Ms. Lasswell derided her ability to do her job.  (Pl's Depo., Ex. 5, p. 144:8-

evidence to demonstrate that Ms. Lasswell's alleged harassing conduct was motivated by any discriminatory animus, much less her sex.[3]

### A.   The Undisputed Evidence Proves That The Supervisor Treated Male  and Female Employees In The Same Manner.

Tellingly, even when lodging other complaints against Ms. Lasswell, Plaintiff never once complained that Ms. Lasswell's alleged harassing behavior was based on her sex, i.e., Plaintiff never complained that Ms. Lasswell was treating her male co-workers more favorably than her.  (Pl's Depo., Ex. 5 pp. 88:3-25, 89:1-17).  More specifically, Plaintiff admits that she did not raise any issues related to sex discrimination in November, 2012, when meeting with Ms. Lasswell's supervisor and members of Human Resources to discuss her "work issues" with Ms. Lasswell. *Id*.  Plaintiff presumably never complained to TSA because she did not perceive Ms. Lasswell's conduct to be motivated by her sex.

Indeed, Plaintiff's own deposition testimony establishes that Ms. Lasswell treated male and female employees in Plaintiff's position the same:

> Q.    I hand you what I have marked as Defendant's Exhibit Number 50.  Ask if you can identify this as an intake questionnaire that was completed when you went to the EEOC offices on April 19, 2013…

---

12).  Plaintiff simply made these self-serving allegations in her <u>verified</u> interrogatory answers to bolster her baseless hostile work environment claim.

[3]   TSA would also note that a strong inference against discrimination exists here since Ms. Lasswell was involved in Plaintiff's hiring.  *See Arraleh v. County of Ramsey*, 461 F.3d 967, 976 (8th Cir. 2006); Jeff Cathey Depo., Ex. 29, pp. 11:16-21; 12:15-20; 13:9-13).

Q.   "I am one of six employees that served as associate planned giving directors under Diana Lasswell. In her tenure, I am the only one who is still employed with The Salvation Army." Did I read that correctly?

A.   It appears so, yes.

Q.   Of those six how many were male?

A.   Three, I believe.

Q.   And thus I would assume the other three were female; is that right?

A.   There may only be five.

Q.   So would it be three males and two females?

A.   I'm not sure.

**Q.   Do you know of any male associate planned giving director that Diana Lasswell treated better than she treated you?**

**A.   I have no knowledge of that.**

(Pl's Depo. Ex. 5, pp. 146:22-25; 153:3-18) (emphasis added).

Plaintiff further informed the Equal Employment Opportunity Commission ("EEOC") that Ms. Lasswell treated both men and women the same.[4] (Pl's Depo., Ex. 5, p. 160:7-14; *see also* EEOC Sequence of Events, attached to TSA's Motion for Summary Judgment as Ex. 15). In response, the EEOC **correctly** informed Plaintiff that the facts allegedly supporting her hostile work environment claim based on sex discrimination were "self-defeating" because she admitted both men and women were treated the same. *Id., see Dattoli v. Principi*, 332 F.3d 505, 506 (8th Cir. 2003) (upholding motion for summary judgement based on Plaintiff's own statements that alleged harasser treated everyone badly, men and women alike); *Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269 (8th Cir. 1993) (stating a Title VII plaintiff must prove that one sex was treated worse than the other); *Ellet v. Big Red Keno, Inc.*, Nos. 98-3046, 98-3694, at *1, 221 F.3d

---

[4] Plaintiff previously attached this exhibit to her response in opposition to The Salvation Army's motion for partial dismissal [Dkt. 19, p.8].

1342 (8th Cir. July 21, 2000) (attached to TSA's Motion for Summary Judgment as Exhibit 26) (upholding motion for summary judgement because Plaintiff admitted that all employees (male and female) were subject to same offensive workplace atmosphere; stating "[a] dually offensive sexual atmosphere in the workplace, no matter how offensive, is not unlawful discrimination unless one gender is treated differently than the other").

The bottom-line is that Plaintiff admits Ms. Lasswell did not discriminate with regard to her alleged inappropriate behavior – Ms. Lasswell allegedly subjected both Plaintiff and her male counterparts equally to the same offensive and demeaning conduct. In other words, Plaintiff admits Ms. Lasswell was an "equal opportunity" harasser. This alone defeats Plaintiff's claim for hostile work environment, as she is unable to establish the third element of her prima facie claim: that Ms. Lasswell's alleged harassment of her was based on sex. *Id.* Therefore, Plaintiff's hostile work environment claim is ripe for summary judgment and dismissed with prejudice.[5]

### B. The Alleged Actions Of The Supervisor Were Not Severe and Pervasive Enough To Constitute A Hostile Work Environment.

Even if Plaintiff could demonstrate Ms. Lasswell's alleged harassing conduct was based on her sex, which she cannot, Plaintiff lacks any evidence that Ms. Lasswell's alleged conduct created a hostile work environment. "[T]he standard for demonstrating a

---

[5] The only claim for sex discrimination that Plaintiff has asserted in this case is her hostile work environment claim. [Dkt. 28, ¶¶ 48-55, 60-65]. However, to the extent Plaintiff attempts to argue she has also asserted a claim for disparate treatment based on her sex, the claim fails for the same reason as her hostile work environment claim: Plaintiff lacks any evidence to prove Ms. Lasswell's alleged harassment was based on sex.

hostile work environment on the basis of sexual harassment is a demanding one and . . . Title VII does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace." *Wilkie v. Dept. of Health and Human Serv.*, 638 F.3d 944, 953 (8th Cir. 2011) (internal quotation omitted). Indeed, "[t]he [United States Supreme] Court **implores lower courts** to apply the demanding harassment standards **to filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing**." *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005) (internal quotation omitted) (emphasis added).

To establish the fourth element, Plaintiff must identify conduct that is not merely rude or unpleasant. *Gilooly v. Mo. Dept. of Health and Senior Serv., Div. of Senior Serv.*, 421 F.3d 734, 738 (8th Cir. 2005). "[A] plaintiff must establish harassment that is so intimidating, offensive, or hostile that it poisoned the work environment." *Id*. (internal quotation omitted). Indeed, "[a] plaintiff must be able to show that the workplace was permeated with discriminatory intimidation, ridicule, and insult." *Id*. (internal quotation omitted).

The Eighth Circuit routinely dismisses hostile work environment claims for failure to demonstrate the alleged harassment was so severe and pervasive as to constitute a hostile work environment. *See LeGrand v. Area Res. for Cmty. & Human Servs.*, 394 F.3d 1098, 1100-03 (8th Cir. 2005) (finding no hostile work environment created by defendant's recurring unwelcome sexual advances over a nine-month period, including asking Plaintiff to watch pornographic movies, hugging and kissing Plaintiff, and

grabbing Plaintiff's buttocks and thigh); *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003) (holding no actionable hostile work environment despite the defendant's inappropriate sexual comments, taking a photograph of plaintiff's buttocks and giving Plaintiff objectionable work assignments); *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 933 (8th Cir. 2002) (holding no actionable hostile work environment where co-employee asked plaintiff if she would have a relationship with him, touched Plaintiff's hand on four to five occasions, requested Plaintiff sketch a sexually offensive planter, asked Plaintiff to perform a task on his computer where its screen saver depicted a naked woman, hung an offensive poster, and asked Plaintiff to type a document for him containing sexually offensive items).

The facts alleged in this case by Plaintiff, even if true, can hardly be seen as demonstrating a workplace permeated with unlawful intimidation, ridicule and insult. *Gilooly,* 421 F.3d at 738. In addition to the above-identified alleged harassing behavior, Plaintiff claims Ms. Lasswell (her female supervisor) habitually informed her she was "young and attractive." (*See* [Dkt. 28, ¶ 27]). Viewed in any light, this alleged conduct does not rise to the level of an actionable hostile work environment. Indeed, as shown above, the allegations lodged against TSA, even if true, are far less egregious than a variety of more heinous conduct found not to support a hostile work environment claim as a matter of law. Accordingly, Plaintiff's allegations can at most be viewed as rude and unpleasant behavior which is insufficient to extend liability for hostile work environment. *Gilooly,* 421 F.3d at 738.

Title VII is not a general civility code and this Court should not treat it as such. *Wilkie,* 638 F.3d at 953.  Therefore, for the reasons stated above, TSA respectfully requests that the Court grant its motion for summary judgment of Plaintiff's hostile work environment claim and dismiss this claim with prejudice.[6]

### III.  TSA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM BECAUSE PLAINTIFF FAILS TO PROVE THAT SHE WOULD NOT HAVE BEEN FIRED "BUT FOR" THE FILING OF HER EEOC CHARGE.

In order to prove retaliation, Plaintiff must show that: (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action; and (3) a causal connection exists between her protected activity and the adverse action. *Jackman v. Fifth Judicial District Dept. of Correctional Servs*., 728 F.3d 800, 804 (8th Cir. 2013). Further, retaliation must be the "but for" cause of the adverse action.  *Id.*  Indeed, "[t]o establish causation, [the plaintiff] must prove 'the desire to retaliate was the but for cause of' [her] termination--that is, 'that the unlawful retaliation would not have occurred in the absence of the alleged wrongful actions or actions of [TSA]."  *Wright v. St. Vincent Health System,* 730 F.3d 732, 737 (8th Cir. 2013) (quoting *Univ. of Tex. S.W. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2528, 2533 (2013)).

If Plaintiff can state a *prima facie* case, TSA has the burden of production to state a legitimate, non-retaliatory reason for the adverse action. *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006).  Should TSA meet this burden,

---

[6] Even if Plaintiff could get past her *prima facie* case, which she cannot, the claim still fails as a matter of law because Plaintiff has offered no evidence that TSA's legitimate, non-discriminatory reason for her termination was really a pretext for unlawful discrimination based on her sex.

summary judgment against Plaintiff is warranted unless she shows that there is a genuine issue of fact as to whether TSA's proffered non-retaliatory reason is pretextual.  *Id.*

Here, the decision to terminate Plaintiff for poor performance was made on April 19, 2013.   (Lapole Depo, Ex. 3, pp. 62:25; 63:1-5)**.**  Three days later, Plaintiff notified TSA's Human Resource Manager that she had contacted the EEOC.   (Email from Plaintiff dated 4/22/13, Ex. 13).

Plaintiff conveniently now alleges that she told Diana Lasswell she *intended* to file an EEOC Charge on April 17, 2013 -- two days before the termination decision was made.  (Amended Complaint, Ex. 16, ¶ 29).  It appears that Plaintiff's entire retaliation case is thus premised on the timing of an alleged comment two days before the termination decision without any support in the record other than Plaintiff's own self-serving testimony.

While timing can be sufficient to get past the *prima facie* case, it is unquestionably insufficient to rebut TSA's legitimate, non-retaliatory business reason.  *Arraleh v. County of Ramsey*, 461 F.3d 967, 977-78 (8th Cir. 2006); *Green*, 459 F.3d at 915-16; *Henson v. Hawker Beechcraft Corp.*, 2010 WL 3167528, at * 7-8 (E.D. Ark. West. Div. Aug. 10, 2010), attached to TSA's Motion for Summary Judgment as Ex. 27.

Here, Plaintiff was on multiple performance enhancement plans beginning well before any alleged threat to file an EEOC Charge.  (30 Day Enhancement Action Plan, attached to TSA's Motion for Summary Judgment as Ex. 9; 60 Day Strategic Action Plan, attached to TSA's Motion for Summary Judgment as Ex. 10; Sixteen Day Action Performance Plan, attached to TSA's Motion for Summary Judgment as Ex. 11; and

Lapole Depo., Ex. 3, pp. 62-63:1-22; 67:10-22.).   And there is no evidence that any similarly situated employee at TSA received more favorable treatment.   Moreover, there is no evidence that any of the decision-makers were aware of this alleged comment to Ms. Lasswell.   In fact, Mr. Lapole testified that he was unaware of any complaint by Plaintiff concerning sex and that the issue never came up in the termination discussions. (Lapole Depo., Ex. 3, pp. 64:1-21; 65:9-11, 18-24).

More importantly, Plaintiff lacks any evidence that this purported threat of filing an EEOC Charge was the "but for" reason she was terminated.   First, Plaintiff self-servingly claims she was terminated as a result of her sex and in retaliation for filing an EEOC Charge.   This alone is sufficient to demonstrate that Plaintiff herself believes that her filing of an EEOC Charge was not the "but for" reason she was terminated.   Second, the undisputed fact that TSA had placed Plaintiff on various performance enhancement plans, ultimately terminating her for poor performance, long before she ever mentioned the EEOC defies Plaintiff's claim that retaliation was the "but for" reason TSA terminated her employment.

In sum, Plaintiff's evidence of pretext is entirely speculative.   Plaintiff is unable to point to any evidence beyond mere timing to demonstrate a wrongful motive for her termination.   More specifically, Plaintiff lacks any evidence to demonstrate that her poor performance was not the true "but for" reason she was terminated.   Therefore, summary judgment should be entered in favor of TSA on Plaintiff's retaliation claim.

## IV.   TSA IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF IS JUDICIALLY ESTOPPED FROM PURSUING THIS ACTION BY HER FAILURE TO NOTIFY THE BANKRUPTCY COURT OF THIS LITIGATION IN A TIMELY FASHION.

The judicial estoppel doctrine's "purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Eastman v. Union Pacific R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). Though varying circumstances require that the doctrine be invoked, courts typically consider three factors: (1) "a party's subsequent position must be 'clearly inconsistent' with its former position;" (2) "whether the suspect party succeeded in persuading a court to accept that party's former position, 'so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled;'" and (3) "whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped." *Eastman*, 493 F.3d at 1156 (citing *New Hampshire v. Maine*, 532 U.S. at 751). "Judicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Eastman*, 493 F.3d at 1158 (citation omitted).   Moreover, a representation to a bankruptcy court that a debtor has no claim while simultaneously pursuing such claim in another forum is a "clearly" inconsistent position in the context of judicial estoppel. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275 (11th Cir. 2010).

29

In a bankruptcy proceeding, a debtor has a continuing duty to disclose assets and to amend financial statements and schedules if circumstances change. *Id.* at 1274-75. Such full disclosure is "'crucial' to the system's 'effective functioning.'" *Id.* at 1274. Further, in *Robinson*, the Eleventh Circuit upheld the district court's finding that the debtor – who failed to disclose a claim while pursuing it in a separate court – had committed a mockery of the judicial system with a motive to conceal her action. *Id.* at 1275.

Here, Plaintiff filed a Chapter 13 Bankruptcy Petition on November 22, 2013. (2013 Bankruptcy Petition, attached to TSA's Motion for Summary Judgment as Ex. 17). In Schedule B, Plaintiff was required to list all "contingent and unliquidated claims of any nature" and to give the value of each. (2013 Bankruptcy Petition, attached to TSA's Motion for Summary Judgment as Ex. 17, p.14). In response to that question, Plaintiff stated that she had an "EEOC case open against the Salvation Army. EEOC still has the case. They have not given the debtors' a right to sue letter." *Id.*

Plaintiff had in fact filed a Charge of Discrimination with the EEOC on April 19, 2013. (Amended Complaint, Dkt. 28, ¶ 37). In that Charge, she alleged that TSA had discriminated against her on the basis of her sex. *Id.* Plaintiff received a Notice of Right to Sue from the EEOC on or about May 12, 2014. *Id. at ¶ 46.* However, at no time did Plaintiff amend her Bankruptcy Petition to inform that Court that she had received a Notice of Right to Sue and that she had filed suit alleging sex discrimination. Nor did she amend the same to disclose to the Bankruptcy Court that she was also pursuing a FLSA action.

30

Indeed, this Plaintiff apparently made no attempt to notify the Bankruptcy Court or Trustee of this lawsuit at all until TSA raised the estoppel issue in its Objection to Plaintiff's Motion to Certify a Collective Action.  (Response, Dkt. 35).  Even then, Plaintiff waited an additional eight months to file her motion to appoint special counsel which ironically appears to have been filed on the day before Plaintiff's deposition was taken.  (Motion to Appoint Special Counsel, attached to TSA's Motion for Summary Judgment as Ex. 19).

Plaintiff's late attempt to file a motion seeking special counsel (after TSA called it to the Court's attention) does not remedy her failure to identify these claims in her Bankruptcy Petition earlier.  Plaintiff had a continuing obligation to provide notice to the bankruptcy court of any changes in her financial statements; however, she failed to do so. This is fatal to her claims.  *See White v. Wyndham Vacation Ownership, Inc.,* 617 F.3d 472, 481-82 (6th Cir. 2010) (belated amendment of bankruptcy filing does not overcome judicial estoppel); *Love v. Tyson Foods, Inc*., 677 F.3d 258, 262 (5th Cir. 2012) (applying judicial estoppel to bar employment discrimination action when it was not initially disclosed to bankruptcy court, despite later disclosure); *Kunstmann v. Aaron Rents, Inc*., 2014 WL 1388387, at * 7 (N.D. Ala. April 9, 2014) (dismissing plaintiffs who amended after being notified by opposing counsel of their deficiency, finding that "if this court allowed Plaintiffs to circumvent the application of judicial estoppel by amending their bankruptcy complaints only after being caught red-handed, the court would create an incentive for future plaintiffs to keep information about the pending lawsuits to

themselves as long as possible, hoping to avoid sharing any potential payout with their creditors."), attached to TSA's Motion for Summary Judgment as Ex. 28.

Plaintiff now mocks the judicial system and seeks to have this Court determine the claims she concealed in her bankruptcy proceeding.  This is the very circumstance that the doctrine of judicial estoppel prevents.  In light of the undisputed facts, Plaintiff is judicially estopped from bringing this action, and as such, her claims must be dismissed.

## V.  PLAINTIFF'S BACKPAY, IF ANY, UNDER HER TITLE VII CLAIMS IS LIMITED BECAUSE SHE TOOK HERSELF OUT OF THE JOB MARKET.

Plaintiff has a duty to mitigate her damages. *E.E.O.C. v. Sandia Corp*., 639 F.2d 600, 627 (10th Cir. 1980). Generally, an employer is not liable for backpay during periods a plaintiff was unavailable for work. *Canova v. Nat'l Labor Relations Bd.*, 708 F.2d 1498, 1505 (9th Cir. 1983) (citing *Am. Mfg. Co*., 167 N.L.R.B. 520, 522 (1967)); *see also Endres v. Helms*, 617 F. Supp. 1260, 1269 (D.C. Cir. 1985) (backpay should not be awarded to plaintiff for periods he is unable to work because of his poor health).

Here, it is undisputed that Plaintiff has voluntarily taken herself out of the job market that she formerly occupied.  Other than the three months following her termination, she has never looked for work in planned giving or related jobs.  (Pl's Depo., Ex. 5, pp. 31:14-17; 15:13-22; 33:3-11).  Since August of 2013, she has either been in school (obtaining her second Master's Degree) or has been teaching.  (Pl's Depo., Ex. 5, p. 33:3-9).  Plaintiff has made clear that she intends to make teaching her career. (Resume, attached to TSA's Motion for Summary Judgment as Ex. 20).  Plaintiff's backpay, if any, is therefore limited to the three months following her termination.  *See*

*e.g., Miller v. Marsh*, 766 F.2d 490, 492 (11th Cir. 1985) (no entitlement to backpay after enrolling in school since plaintiff was no longer in the job market); *Irva v. Britton*, 753 F.2d 80, 81 (8th Cir. 1985) (noting that one plaintiff had been denied backpay after returning to school).   Thus, should the Court not grant TSA's request for summary judgment in its entirety, then TSA respectfully seeks an Order limiting Plaintiff's damages to three months due to her failure to mitigate.

## <u>CONCLUSION</u>

For all the reasons discussed above, TSA is entitled to summary judgment on all of Plaintiff's claims.

33

s/J. Bruce Cross
Leonard Court, OBA #1948
Allen L. Hutson, OBA #30118
-Of the Firm-
CROWE & DUNLEVY
A Professional Corporation
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
leonard.court@crowedunlevy.com
allen.hutson@crowedunlevy.com

AND

J. Bruce Cross, ABA #74028
Gregory J. Northen, ABA #2011181
Cross, Gunter, Witherspoon, & Galchus
500 President Clinton Avenue, Suite 200
Post Office Box 3178 (72203)
Little Rock, Arkansas 72201
bcross@cgwg.com
gnorthen@cgwg.com

ATTORNEYS FOR DEFENDANT
THE SALVATION ARMY

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of November, 2015, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing. The Court Clerk will transmit a Notice of Electronic Filing to the following ECF registrants:

Steve Rauls
Josh Sanford
SANFORD LAW FIRM PLLC
One Financial Center
650 South Shackleford, Suite 411
Little Rock, AR  72211
(501) 221-0088
steve@sanfordlawfirm.com
josh@sanfordlawfirm.com

ATTORNEYS FOR PLAINTIFF


s/ J. Bruce Cross
J. BRUCE CROSS