IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

LAUREN SISSON                                                                                    PLAINTIFF

v.                                    Case No. 6:14-cv-06090

THE SALVATION ARMY                                                                   DEFENDANT

### MEMORANDUM OPINION

Before the Court is the Motion for Summary Judgment filed by Defendant, The Salvation Army ("TSA"). (ECF No. 53). Plaintiff Lauren Sisson ("Sisson") has filed a Response. (ECF No. 58). TSA has filed a Reply (ECF No. 64) and Supplemental Authority in Support (ECF No. 68). Also before the Court is Plaintiff's Cross-Motion for Partial Summary Judgment. (ECF No. 50). TSA has filed a Response (ECF No. 60), and Sisson has filed a Reply (ECF No. 63). The Court finds these matters ripe for its consideration.

### I. BACKGROUND

TSA is a religious charitable organization that uses donations to provide services and assistance to persons in need. In July 2012, TSA hired Sisson as an Associate Planned Giving Director ("APGD"). APGDs are responsible for soliciting and securing planned gifts such as wills, trusts, and annuities within an assigned geographic area. They are responsible for cultivating and maintaining relationships with donors, assisting donors in estate planning, and helping to determine the most appropriate planned gift. Sisson was terminated in May 2013. In October 2014, Sisson filed an Amended Complaint against TSA, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. (the "FLSA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq*.; and the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101 *et seq*. (ECF No. 28).

TSA filed a Motion for Summary Judgment, arguing that (1) Sisson's FLSA claim fails because APGDs are exempt from FLSA overtime requirements as a matter of law; (2) Sisson's Title VII discrimination claim fails because the undisputed facts demonstrate that Sisson's supervisor treated both male and female employees the same and that the alleged acts were neither severe nor pervasive; (3) Sisson cannot establish that TSA's legitimate, nondiscriminatory, nonretaliatory reason for terminating her was a pretext for unlawful discrimination; and (4) all of Sisson's claims fail because Sisson is estopped from pursuing this action by failure to timely notify the bankruptcy court of this litigation. Sisson's Cross-Motion for Partial Summary Judgment asserts that, as a matter of law, APGDs are not exempt from FLSA overtime requirements.

## II. STANDARD

A motion for summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To establish that a genuine issue of material fact exists, the nonmoving party must show that (1) there is a factual dispute, (2) the disputed fact is material to the outcome of the case, and (3) the dispute is genuine. *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 339, 401 (8th Cir. 1995). A dispute is genuine only if a reasonable jury could return a verdict for either party. *Id.*; *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510 (8th Cir. 1995).

## III. DISCUSSION

### A. FLSA Claims

In their cross-motions for summary judgment on Sisson's FLSA claim, the parties dispute whether TSA's classification of APGDs as exempt from overtime requirements under the FLSA is

proper as a matter of law.  The FLSA mandates that an employer may not subject nonexempt employees to work a week in excess of forty hours, unless the employee is compensated for his or her overtime with additional pay.  29 U.S.C. § 207.  The statute exempts certain employees from its overtime protections, including any employee employed in an administrative capacity.  29 U.S.C. § 213(a)(1).[1]  Sisson argues that APGDs are not exempt administrative employees.  TSA asserts that such a classification is correct.

"The burden is on the employer to prove that th[e] exemption applies by demonstrat[ing] that their employees fit plainly and unmistakably within the exemption's terms and spirit."  *Spinden v. GS Roofing Prods. Co., Inc.*, 94 F.3d 421, 426 (8th Cir. 1996) (citation omitted).  "The question of how [Sisson] spent [her] working time . . . is a question of fact [and] [t]he question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law."  *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

United States Department of Labor regulations define an administrative employee as someone:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . .;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).  It is undisputed that the first prong of the regulation is satisfied.  Thus, the Court must determine whether the undisputed facts demonstrate that the APGDs' "primary duties" satisfy the second and third prongs of the regulation.

---

[1]The FLSA also exempts executive and professional employees.  TSA does not dispute Sisson's assertion that the executive and professional exemptions are inapplicable to APGDs.  Accordingly, the Court will not address those exemption categories.

An employee's "primary duty" is the "the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). The following factors may be considered: "relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed." 29 C.F.R. § 541.700(a); *see also Grage v. N. States Power Co.-Minnesota*, 813 F.3d 1051, 1055 (8th Cir. 2015). "[A]n employee's primary duty is that which is of principal importance to the employer, rather than collateral tasks which may take up more than fifty percent of his or her time." *Spinden*, 94 F.3d at 427 (citation omitted).

The APGD Job Description indicates that APGDs solicit and secure planned gifts, cultivate and maintain effective relationships with donors, assist donors in estate planning, communicate and visit with prospects and donors, remain aware of the specific needs of the donor, prepare and maintain records of visits in files, and coordinate with the supervisor and other advisors to secure the gifts. (ECF No. 53-4).

Lindsay Lapole, TSA Territorial Planned Giving Director, described the day-to-day responsibilities of an APGD as generating appointments by phone, following up on appointments with personal visits, following up on the personal visits by preparing proposal paperwork, and "bringing to bear whatever resources are necessary to move [the gift development] process forward." (ECF No. 50-1). He said that the primary responsibility of the APGD is to solicit and secure planned gifts such as wills, trusts, and annuities within their geographic area. The APGD would meet with

the donor and build trust with them. It was the responsibility of the APGD to be educated on legal issues so that the APGD could speak with authority when visiting with donors.

In her role as an APGD, Sisson would determine, along with her supervisor, which prospective donors she would visit. She would review prospects' surveys before she met with them. She would then, collaboratively with her supervisor, create a plan, which she would then execute through a conversation with the donor. Sisson would first meet with donors and discuss their plans and educate them on specific types of gift options. She would gather information about the donor and would follow up and cultivate relationships with the donor. Sisson claims that her supervisor would accompany her on the majority of her visits. The undisputed facts demonstrate that the primary duty of the APGDs is to find potential donors and then cultivate relationships with them in hopes of soliciting and securing planned gifts.

The second prong of the administrative employee definition requires the Court to determine whether the undisputed facts demonstrate that APGDs performed non-manual work directly related to management or general business operations of TSA. Duties related to management or general business are distinguished from "working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). The APGDs are responsible for more than simply providing a service or closing a deal. Instead, they work with each prospect to create a custom gift that fits within the prospects' own individual wishes. Further, APGDs work to establish long-term relationships, keep prospects and donors happy, and to maintain the overall reputation of the employer. This work is directly related to the business of TSA. Accordingly, the Court finds that TSA has met its burden of establishing that APGDs perform non-manual work directly related to management or general business operations of TSA. *See Hines v. State Room, Inc.*, 665 F.3d 235, 242-43 (1st Cir. 2011).

5

The final prong of the administrative employee definition requires the Court to determine whether the APGDs' primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). Factors to consider include "whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; [and] whether the employee has authority to negotiate and bind the company on significant matters." 29 C.F.R. § 541.202(b). To have discretion and independent judgment, an employee is not required to make decisions with "unlimited authority and a complete absence of review," and may "consist of recommendations for action rather than the actual taking of action." 29 C.F.R. § 541.202(c).

The Court finds that APGDs were responsible for exercising discretion and independent judgment in their jobs. Sisson was responsible for identifying prospective donors. (ECF No. 53-5, pg. 13). She would have conversations with prospects and then identify whether they would qualify as a prospective donor. (ECF No. 53-5, pg. 13). Sisson would also telephone potential donors and then it was her responsibility to perform necessary follow-ups to cultivate relationships with prospects and donors. (ECF No. 53-5, pg. 12).

Sisson argues that she did not exercise discretion or independent judgment because she was supervised and had meetings with her supervisor before meeting with potential donors and that her supervisor went with her on visits more than half of the time. Lapole testified that because of the "information that needed to be gleaned in the first 12 to 18 months," "constant contact" with the supervisor was necessary to learn the "nuances of the position." (ECF No. 50-3). The Court expects

that a first-year employee will have their decisions or recommendations reviewed. Moreover, Sisson was placed on various performance-enhancing programs during the majority of her employment. It is realistic for an employer with reservations about an employee's performance to require enhanced contact with a supervisor before proceeding alone. *See* (ECF No. 58-2, p. 2). Thus, the Court finds that there is no dispute necessary for a jury to determine, and that APGDs exercised discretion and independent judgment as to matters of significance.

Accordingly, the undisputed facts demonstrate that Sisson cannot make out an FLSA claim. TSA's Motion for Summary Judgment on Sisson's FLSA claim should be granted.

### B. Title VII Sex Discrimination

TSA next asserts that it is entitled to summary judgment on Sisson's hostile work environment sex discrimination claims brought under Title VII and the ACRA. Under these statutes, it is illegal for an employer to discriminate against an employee because of the employee's sex. 42 U.S.C. § 2000e-2(a)(1); Ark. Code § 16-123-107. To establish a hostile work environment claim under both Title VII and the ACRA, Sisson must show that: "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take appropriate remedial action." *Nichols v. Tri-National Logistics, Inc.*, 809 F.3d 981, 985 (8th Cir. 2016). "To be actionable, [the] 'objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Clearwater v. Ind. Sch. Dist. No. 166*, 231 F.3d 1122, 1128 (8th Cir. 2000) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). "[T]o determine whether an environment is sufficiently hostile or abusive, [the Court looks] 'at all the circumstances,' including the 'frequency

of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher*, 524 U.S. at 787-88 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). TSA argues that Sisson cannot demonstrate that any harassment was based on her sex, or that the harassment was sufficiently severe or pervasive to affect a condition of her employment.

Sisson asserts that, on April 16, 2013, her supervisor, Diana Lasswell, Divisional Planned Giving Director, commented to her that her appearance as an attractive female may make working with officers difficult. (ECF No. 19-1). Sisson also points to the undisputed fact that she was placed on a number of performance review periods during her employment.

These facts are insufficient to establish that Sisson was subject to a hostile work environment on the basis of her sex. There is no indication that any discriminatory conduct was linked to Sisson's performance review periods. Sisson recounts only one statement made to her which involved her sex, and that statement was not severe, physically threatening or humiliating. At most, the statement may have been offensive to Sisson. Title VII is not a general civility code and the Court will not treat it as such. *See Wilkie v. Dep't of Health and Human Servs.*, 638 F.3d 944, 953 (8th Cir. 2011).

Accordingly, the undisputed facts demonstrate that Sisson cannot make out a claim for sex discrimination and hostile work environment under Title VII or the ACRA. TSA's Motion for Summary Judgment on those claims should be granted.

### C. Title VII Retaliation

TSA asserts that Sisson's retaliation claim fails because she cannot prove that TSA's desire to retaliate was the "but-for" cause of her termination and because she cannot demonstrate that TSA's legitimate, nonretaliatory business reason for discharging her was pretext for unlawful retaliation.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Jackman v. Fifth Judicial District Dep't of Correctional Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). A defendant may rebut the plaintiff's claim by advancing a legitimate, nonretaliatory reason for its action, which the plaintiff must then show was only a pretext for discrimination. *Id.*

A plaintiff must show that "the desire to retaliate was the but for cause of" her termination. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013); *see also Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008). Temporal proximity alone is insufficient to show that an employer's proffered reason for action was a pretext for discrimination. *Gibson v. Geithner*, 776 F.3d 536, 541 (8th Cir. 2015). Evidence of pretext and retaliation "is viewed in light of the employer's justification." *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005). In order to succeed, Sisson "must both discredit [TSA's] asserted reasons for her termination and show that the circumstances permit drawing a reasonable inference that the real reason for her termination was retaliation." *Hutton v. Maynard*, 812 F.3d 679, 684-85 (8th Cir. 2016).

Sisson began working at TSA in July 2012. She was then put on a number of plans to help her progress in her performance. On October 24, 2012, she was put on a 30-Day Enhancement Action Plan. (ECF No. 53-9). On November 29, 2012, she was put on a 60-Day Strategic Action Plan. (ECF No. 53-10). On January 29, 2013, she was put on a "Sixteen [Day] Strategic Action Plan." (ECF No. 53-11). On February 20, 2013, Lasswell sent an email, stating

> Please be advised that [Sisson] has successfully completed her sixteen day strategic action plan. She was released from the plan on 2/19/2013. She has exceeded all expectations and closed a gift in this period. I look forward to her continuing level of activity and success in planned giving.

9

(ECF No. 58-1).

On April 17, 2013, Sisson told Lasswell that she "would be contacting the EEOC" regarding a comment that Lasswell made to her. (ECF No. 58-1, pg. 12). On April 19, 2013, Lapole, TSA Development Director Chad Haney, and General Secretary Major James Hall met together and made the decision to terminate Sisson because "it was [] apparent that [she] was not grasping the elements of this position" that would "make her successful long-term." (ECF No. 53-3, pg. 13, 16). During the meeting, Lapole, Hall, and Haney did not discuss Sisson's gender. (ECF No. 53-3). At that time, Lapole was not aware of Sisson's EEOC charge and had not been made aware of any of Sisson's complaints regarding gender discrimination. (ECF No. 53-3). After they made the decision, Hall, the person responsible for communicating the termination decision to Sisson, had travel plans that prohibited him from immediately communicating their decision. (ECF No. 53-3). On April 22, 2013, Sisson notified TSA's Human Resource Manager that she had contacted the EEOC. (ECF No. 53-3). That date was the first time Lapole was aware of the EEOC charge. (ECF No. 53-3). Sisson's termination was effective May 3, 2013. (ECF No. 53-12).

Sisson argues that her termination was in retaliation for filing her complaint with the EEOC because TSA had indicated continued commitment to her employment by sending an email that all of TSA's problems with Sisson had been resolved, not putting her on any additional action plans, and scheduling training for Sisson in March and April 2013. She also asserts that "questionable circumstances" surrounding her termination, including a lapse in time between the decision to terminate her and her ultimate termination demonstrate TSA's desire to retaliate against her.

Sisson has failed to present evidence that the decisionmakers were aware of her statement to Lasswell when they made the decision to terminate her. *Culton v. Missouri Dept. of Corrections*, 515 F.3d 828 (8th Cir. 2008) ("[F]ailure to present any evidence that [decisionmaker] was aware of

10

[employee's] protected activities is fatal to [employee's] retaliation claim"). The evidence is undisputed that the persons involved in making the decision to terminate Plaintiff were Lapole, Haney, and Hall, none of whom were aware of the statement by Sisson to Lasswell that she planned to file a charge with the EEOC. *See Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 77 (8th Cir. 1998) (one plaintiff alleged that he was discharged for assisting in another plaintiff's filing of discrimination charge; there was no triable question because plaintiffs had not presented any evidence upon which jury could have found that employer knew that one plaintiff had helped other plaintiff file charge). It is also undisputed that these decisionmakers were not aware of her actually filing a charge with the EEOC until after the April 19, 2013 meeting when they decided to terminate her employment. Accordingly, Sisson cannot demonstrate a causal connection between her protected statement to Lasswell, the filing of her EEOC charge, and her termination, as required to establish her prima facie case.

Sisson points to the temporal proximity of her statement to Lasswell and the decision to terminate her, as well as the temporal proximity of her filing of a charge with the EEOC to her final termination. The Eighth Circuit, in *Green v. Franklin Nat. Bank of Minneapolis*, noted that there is some "tension" in its cases regarding the ability of timing alone to establish a claim for retaliation. 459 F.3d 903, 915 (8th Cir. 2006), comparing *Kipp v. Mo. Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) ("[A] mere coincidence of timing can rarely be sufficient to establish a submissible case of retaliatory discharge."), with *Peterson v. Scott Cnty.*, 406 F.3d 515, 524 (8th Cir. 2005) ("An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation."). However, the Eighth Circuit in *Green* did not decide whether timing alone can establish a prima facie case of retaliation because it is clear

under Eighth Circuit precedent that, if a plaintiff can establish a prima facie case, the plaintiff may not rely on timing to rebut a defendant's legitimate, non-discriminatory reason for an adverse employment action. *Green*, 459 F.3d at 916.

Accordingly, even if Sisson were able to make out a prima facie case, she rests her pretext argument on timing and speculative evidence alone, which are insufficient to show a pretextual motive by TSA. *See Green*, 459 F.3d at 916. Sisson has presented no evidence of conduct or statements by any person which reflect an attitude demonstrating a desire to retaliate against her. TSA has never wavered from its explanation for terminating Sisson, which militates against a finding of pretext. *See EEOC v. Trans States Airlines, Inc.*, 462 F.3d 987, 995 (8th Cir. 2006) (noting the defendant employer never wavered from its one explanation for terminating the plaintiff, and distinguishing those cases in which the employers' substantial change in position supported an inference of pretext). Sisson states that she was not placed on any performance plans between February and April, but does not provide any evidence to demonstrates the quality of her performance during that time. The email sent by Lasswell suggests only that Sisson performed well in February and that she had completed her action plans. The"ride-along" training scheduled for March and April were both planned before TSA made its decision to terminate Sisson. Moreover, in an organization as large as TSA, the Court does not find the timeline leading to her ultimate termination "suspicious," particularly in light of the undisputed evidence that Hall was traveling and unable to immediately make Sisson aware of their decision to terminate her. The record is devoid of evidence indicating that this lapse in time is indicative of a desire on the part of TSA to retaliate against Sisson.

When viewing the evidence in a light most favorable to Sisson, the undisputed facts demonstrate that Sisson has failed to discredit TSA's legitimate, non-retaliatory business reason for

her termination, that Sisson was fired for lack of performance after she was placed on a number of performance-enhancing plans and failed to perform. Accordingly, Sisson cannot show that TSA's desire to retaliate against her was the "but-for" cause of her termination. There are no undisputed facts which necessitate a jury's determination. The Court finds that TSA's Motion for Summary Judgment on Sisson's retaliation claim should be granted.[2]

### IV.  CONCLUSION

For the reasons stated, Plaintiff's Partial Motion for Summary Judgment (ECF No. 50) is **DENIED**. Defendant's Motion for Summary Judgment (ECF No. 53) is **GRANTED**. All Plaintiff's claims against Defendant are dismissed. The Court will issue a Judgment of even date consistent with this Memorandum Opinion.

**IT IS SO ORDERED**, this 3rd day of August, 2016.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[2]Because the Court finds that TSA is entitled to summary judgment on Sisson's claims as a matter of law, it is unnecessary for the Court to determine whether Sisson is judicially estopped from bringing this claim.